TERESA C. CHOW (SBN 237694)
*tchow@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:  310.820.8800
Facsimile:   310.820.8859

*Attorneys for Defendants*
LEARFIELD COMMUNICATIONS, LLC
and SIDEARM SPORTS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY HEERDE and MARK HAINES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEARFIELD COMMUNICATIONS, LLC, SIDEARM SPORTS, LLC, and UNIVERSITY OF SOUTHERN CALIFORNIA,<br><br>Defendants. | Case No.:  2:23-cv-04493-FLA-MAAx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>*[Filed Concurrently with Notice of Motion; Fed. R. Civ. P. 5.1 Notice of Constitutional Question; and (Proposed) Order]*<br><br>Date:          October 20, 2023<br>Time:          1:30 p.m.<br>Courtroom:   6B<br><br>Case Filed:   06/08/2023 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.:  2:23-CV-04493-FLA-MAAx

# <u>TABLE OF CONTENTS</u>

<u>**Page(s)**</u>

INTRODUCTION ...................................................................................... 9

BACKGROUND ...................................................................................... 10

STANDARD OF LAW ............................................................................ 10

ARGUMENT ........................................................................................... 11

    A.    Plaintiffs Fail To State A Claim For Violation Of The VPPA. .......... 11

        i.    Plaintiffs Do Not Allege Learfield Are "VTSPs." ................... 11

        ii.    Plaintiffs Do Not Allege That They Are "Consumers.".......... 12

        iii.    Plaintiffs Do Not Allege That Learfield Disclosed PII. .......... 13

        iv.    Plaintiffs Do Not Allege Learfield Knowingly Disclosed PII.................................................................................................. 14

    B.    The VPPA, As Applied To Learfield, Violates The First Amendment. ....................................................................................... 18

    C.    Certain Parts Of The VPPA Are Facially Unconstitutional. ............. 18

    D.    Plaintiffs Fail To State A Claim For Violation Of The CIPA. ........... 20

        i.    Plaintiffs Have Not And Cannot State A Claim For Violation Of CIPA Because Plaintiffs Have No Reasonable Expectation Of Privacy In Their Browsing Information. ........................................................................... 21

        ii.    Contents of communications were not disclosed. ................... 21

        iii.    Plaintiffs Fail To Allege An Underlying Violation Of § 631(a)'s First Clause For "Intentional Wiretapping." .............. 23

        iv.    Plaintiffs Fail To Allege An Underlying Violation Of § 631(a)'s Second and Third Clause. ......................................... 24

        v.    Plaintiffs Fail To Allege An Underlying Violation Of § 631(a)'s Fourth Clause. ......................................................... 26

    E.    Plaintiffs Fail To State A Claim For Violation Of CIPA § 635. ........ 27

    F.    Plaintiffs Fail To State A Claim For Invasion Of Privacy................. 28

    G.    Plaintiffs Fail To State A Claim For Violation Of The Wiretap Act. ..................................................................................................... 28

        i.    All Parties consented to the disclosure. ................................... 29

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2



ii.    "Contents" of communication were not disclosed. ..................29

iii.    The Information Was Not "Intercepted." .................................30

H.    Complaint Should Be Dismissed Because USC Is An
Indispensable Party. .............................................................................30

CONCLUSION...................................................................................................30

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' RULE 12(B)(6) AND 12(B)(7)
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.:  2:23-CV-04493-FLA-MAAx

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
    2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ...................................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 3

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
    140 S. Ct. 2335 (2020) ...................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 2, 3

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973) ...................................................................................... 11

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020)................................................... 13, 14, 15

*Brown v. Entertainment Merchants Assoc.*,
    131 S.Ct. 2729 (2011) ...................................................................................... 11

*Byars v. Hot Topic, Inc.*,
    2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) .................................................... 16

*Byars v. Tire*,
    2023 U.S. Dist. LEXIS 22337 (C.D. Cal. Feb. 3, 2023) .................................... 13

*Cantu v. Tapestry, Inc.*,
    2023 WL 4440662 (S.D. Cal. Jul. 10, 2023)...................................................... 4

*Carroll, v. General Mills, Inc.*,
    2023 WL 4361093 (C.D. Ca. Jun. 26, 2023) .................................................... 4

*Carter v. Scripps Networks, LLC*,
    2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023) .................................................. 4, 5

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' RULE 12(B)(6) AND 12(B)(7)
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.:  2:23-CV-04493-FLA-MAAx

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Central Hudson Gas & Electric Corp. v. Public Service Commission of*
  *New York*,
  447 U.S. 557 (1980) ............................................................................... 11

*Daniel v. Cantrell*,
  375 F.3d 377 (6th Cir. 2004) ................................................................. 12

*Eichenberger v. ESPN, Inc.*,
  2015 WL 7252985 (W.D. Wash. May 7, 2015) ...................................... 7

*Ellis v. Cartoon Network, Inc.*,
  2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ............................................ 7

*Ellis v. Cartoon Network*,
  Inc. 803 F.3d 1251 (11th Cir. 2015) ....................................................... 7

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) .................................................................. 9

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986, 125 Cal. Rptr. 3d 260 (2011), *as modified*
  (June 7, 2011) ....................................................................................... 20

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.*,
  561 U.S. 477 (2010) .............................................................................. 12

*Gardener v. MeTV*,
  2023 WL 4365901 (N.D. Ill. Jul. 6, 2023) .............................................. 5

*Gilday v. Dubois*,
  124 F.3d 277 (1st Cir.1997) .................................................................. 21

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................... 15

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................... 13, 14, 18

*In re Hulu Priv. Litig.*,
  2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ......................................... 7

*Hunthausen v. Spine Media, LLC*,
  2023 WL 4307163 (S.D. Ca. Jun. 21, 2023) ........................................... 5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Jefferson v. Healthline Media, Inc.*,
    2023 WL 3668522 (N.D. Cal. May 24, 2023) ...................................................... 5

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ...................................................... 17

*Licea v. Am. Eagle Outfitters, Inc.*,
    2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ...................................................... 17

*Licea v. Vitacost.com, Inc.*,
    2023 WL 5086893 (S.D. Cal. July 24, 2023) ...................................... 15, 16, 19

*Martin v. Sephora USA, Inc.*,
    2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ...................................................... 16

*Massie v. Gen. Motors LLC*,
    2022 WL 534468 (D. Del. Feb. 17, 2022) ...................................................... 13

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...................................... 12, 15, 17

*Matera v. Google Inc.*,
    2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ...................................................... 13

*McCoy v. Alphabet, Inc.*,
    2021 WL 405816 (N.D. Cal. Feb. 2 2021) ...................................................... 14

*In re Meta Pixel Healthcare Litig.*,
    2022 WL 17869218 (Dec. 22, 2022, N.D. Cal. 2022) ...................................................... 9

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) ...................................................... 17

*Mount v. PulsePoint, Inc.*,
    2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ...................................................... 9

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016) ...................................................... 5, 7, 8

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ...................................................... 17

*Pena v. GameStop, Inc.*,
    2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) ...................................................... 17

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' RULE 12(B)(6) AND 12(B)(7)
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.:  2:23-CV-04493-FLA-MAAx

*Robinson v. Disney Online*,
  152 F. Supp. 3d 176 (S.D.N.Y. 2015) ............................................................ 6, 7

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894, 125 Cal.Rptr. 306 (Ct. App. 1975) ................................. 15

*Salazar v. National Basketball Ass'n.*,
  2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) ..................................................... 5

*Salazar v. Paramount Global d/b/a 247Sports*,
  2023 WL 4611819 (S.D.N.Y. Apr. 24, 2023) .................................................... 5

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) ............................................................ 17

*Tavernetti v. Sup. Ct. of San Diego Cty.*,
  22 Cal. 3d 187 (Cal. 1978) ............................................................................. 12

*Tawam v. Feld Ent. Inc.*,
  2023 WL 5599007 (S.D. Cal. July 28, 2023) .................................................... 5

*U.S. v. Avecedo-Lemus*,
  2016 WL 4208436 (C.D. Cal. Aug. 8, 2016) ................................................... 13

*U.S. v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) ......................................................................... 13

*U.S. v. Heckenkamp*,
  482 F.3d 1142 (9th Cir. 2007) ....................................................................... 13

*United States v. Reed*,
  575 F.3d 900 (9th Cir.2009) .......................................................................... 21

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................ 3

*Warden v. Kahn*,
  99 Cal. App. 3d 805, 160 Cal.Rptr. 471 (Ct. App. 1979) ................................. 15

*Williams v. What If Holdings, LLC*,
  2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......................................... 15, 18

*Yale v. Clicktale Inc.*,
  2021 WL 1428400 (N.D. Cal. Apr. 15 2021) ............................................. 14, 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' RULE 12(B)(6) AND 12(B)(7)
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.:  2:23-CV-04493-FLA-MAAx

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Yoon v. Lululemon, USA Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021)........................................14, 19

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014)...................................................21

**Statutes**

18 U.S.C.A. § 2511.............................................................20, 21

18 U.S.C. § 2510 *et seq.*.....................................................1, 21

18 U.S.C. § 2710 *et seq.*......................................................*passim*

Cal. Penal Code § 631 *et seq.*...........................................1, 12, 15, 16

Cal. Penal Code § 635 *et seq.*....................................................1, 19

Cal. Penal Code § 637.2 *et seq.*....................................................19

**Rules**

F.R.C.P. 12(b)(7) ...............................................................22

F.R.C.P. 19(a) ..................................................................22

Rule 12(b)(6)....................................................................2

**Other Authorities**

https://www.merriam-webster.com/dictionary/cookie (last visited
  September 12, 2023)............................................................9

S. REP. 599, 12, 1988 U.S.C.C.A.N. 4342-1, 4342-9...............................5

U.S. Const. amend I.............................................................11

Webster's Ninth New Collegiate Dictionary 630 (1985)..........................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' RULE 12(B)(6) AND 12(B)(7)
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.:  2:23-CV-04493-FLA-MAAx

1

## **INTRODUCTION**

Plaintiffs' Complaint against Learfield Communications, LLC and Sidearm Sports, LLC (collectively, "Learfield") alleges violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* ("VPPA"), California's Invasion of Privacy Act, Cal. Penal Code § 631 and § 635, the federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* (Wiretap Act"), and a common law claim of invasion of privacy. Plaintiffs allege that, through web services Learfield provided for the University of Southern California's ("USC") website, www.usctrojans.com (the "Website") and other teams' websites (the "Team Websites"),[1] Learfield and USC collectively violated the above statutes by allegedly utilizing various tracking tools on the Team Websites including Google, Meta, Oracle, The Trade Desk, and comScore (the "Third Parties") to track Plaintiffs' website usage (the "Pixel").

Plaintiffs do not state claims against Learfield. Plaintiffs fail to allege a VPPA claim because they do not allege that they are "consumers," Learfield are video tape service providers ("VTSPs"), or an *ordinary person* would be able to glean their video viewing history from the information allegedly shared to any third parties.

Plaintiffs' Wiretap Act, CIPA, and invasion of privacy claim also fail for a myriad of reasons, including because Plaintiffs consented to the use of certain cookies. Further, the type of alleged communications are not protected by CIPA or the Wiretap Act. Finally, Plaintiffs had no reasonable expectation of privacy in the information. Plaintiffs' Complaint should be dismissed with prejudice.[2]

---

[1] Plaintiffs do not allege that they visited any Team Websites, only the USC Website.
[2] In the event Plaintiffs' Complaint is not dismissed in its entirety, Learfield intends to file a motion to transfer this action to the Northern District of New York where Learfield will transfer three other pending VPPA cases brought against the same Learfield entities by the same Plaintiffs' firm in *Brown v. Learfield Communications, LLC, et al.*, No. 1:23-cv-00374 (W.D. Tex.); *Edwards v. Learfield Communications, LLC, et al.*, No. 1:23-cv-00065 (N.D. Fla.); and *Peterson v. Learfield Communications, LLC, et al.*, No. 8:23-cv-00146 (Dist. Neb.).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## BACKGROUND

Plaintiffs allege Learfield Communications "is a collegiate sports marketing company," and Sidearm is a "provider of collegiate athletic web solutions" that "manages websites and mobile platforms, as well as provide[s] the hosting and infrastructure, for colleges and high schools." (Plaintiffs' Complaint ("Compl.") ¶¶ 30-31, 72.) Plaintiffs allege that "[i]n or about 2019, Ms. Heerde subscribed to the USC Trojans e-newsletters," (*id*. ¶ 28), and "[i]n or about 2015, Mr. Haines subscribed to the USC Trojans newsletter." (*Id*. ¶ 29.) Plaintiffs allege that USC and Learfield "are video service providers in that they provided pre-recorded audio-visual materials to Plaintiffs and Class members on their Team Website." (*Id*. ¶ 54.) Specifically, Plaintiffs allege Learfield "develop[s], operate[s], and own[s] the Trojans Website" and "effectively retain[s] complete control of the Trojans Website." (*Id*. ¶ 95.) Plaintiff alleges Learfield "utilize[s] and employ[s] tracking tools" including Google, Facebook, Oracle's Eloqua, Trade Desk and comScore. (*Id*. ¶¶ 33-37.)

Plaintiffs allege that the use of the Facebook Pixel on the Team Website violates the VPPA because "Plaintiffs' personal viewing information was knowingly and systematically disclosed to Facebook, without obtaining their consent." (*Id*. ¶ 96.) Plaintiffs further allege that in violation of the Wiretap Act "[w]hile communicating on the Team Websites, users had the contents of their communications shared with Operator Defendants and the tracking entities," (*id*. ¶ 62) and that their CIPA claim is analogous to their Wiretap claim. (*Id*. ¶ 70.)

## STANDARD OF LAW

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)."[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### A. Plaintiffs Fail To State A Claim For Violation Of The VPPA.

To state a claim under the VPPA, plaintiff must allege that defendant (1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer. *See* 18 U.S.C. 2710(b)(1).

#### i. *Plaintiffs Do Not Allege Learfield Are "VTSPs."*

A VTSP is "any person, ***engaged in the business***, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). Plaintiffs make no allegations regarding "prerecorded video cassette tapes," nor that Learfield is "engaged in the business" of rental, sale or delivery of "similar audio-visual materials." 18 U.S.C. § 2710(a)(4). Plaintiffs' failure to allege Learfield is a VTSP cannot be fixed by amendment because Learfield's business does not fall within the statutory language. To be "engaged in the business" of a particular activity, that activity must be the company's means of support or subsistence. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose"). Delivering video content must be "a focus of the defendant's work" and businesses only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id*. at 1221-22.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT CASE NO.: 2:23-CV-04493-FLA-MAAx

Plaintiffs do not allege Learfield is substantially involved in the conveyance of video content on the Team Websites. *See Carroll, v. General Mills, Inc*., No.CV231746DSFMRWx, 2023 WL 4361093 at *3-4 (C.D. Ca. Jun. 26, 2023) ("[t]he few allegations in the FAC about General Mills' business are conclusory and, at most, indicate that General Mills provides videos as a peripheral part of its marketing strategy" and "[t]he videos on the website are part of Defendant's brand awareness, but they are not Defendant's particular field of endeavor. Nothing suggests that Defendant's business is centered, tailored, or focused around providing and delivering audiovisual content."); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974- BAS-DDL, 2023 WL 4440662 (S.D. Cal. Jul. 10, 2023) (dismissing VPPA claim for failure to allege facts supporting an inference that "[d]efendant or Coach's enterprise is 'significantly tailored' to achieving such a purpose.")

Rather, Plaintiffs simply allege Learfield drafts code to support the universities' ability to provide videos on their own Team Websites and host the videos on the Team Websites. (Compl. ¶¶ 72-73, 77-78, 82, 87-88.) Simply drafting code and providing a digital space for videos to reside to the extent USC wants to include videos on their Team Website is not delivering the videos. By analogy, just because a landlord leases space to a Blockbuster, it is not in the business of "delivering" videos. Plaintiffs do not allege Learfield is a VTSP.

### ii.   *Plaintiffs Do Not Allege That They Are "Consumers."*

Plaintiffs allege only that they subscribed to the USC Trojans e-newsletters.[3] (Compl. ¶¶ 28-29.)  Plaintiffs do not allege that they consumed audio visual materials through their status as newsletter subscribers - as required to be a "consumer" under 18 U.S.C. § 2710(a)(1). "The scope of a 'consumer,' when read with sections 2710(b)(1) and (a)(4), is cabined by the definition of 'video tape service provider,' with its focus on the rental, sale or delivery of audio visual materials." *Carter v.*

---

[3]Plaintiffs do not allege that they subscribed to newsletters of any other team.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT CASE NO.:  2:23-CV-04493-FLA-MAAx

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Scripps Networks, LLC*, No. 22-cv-2031 (PKC), 2023 WL 3061858, at *6 (S.D.N.Y. Apr. 24, 2023). Thus, "[i]n the statute's full context, a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser or subscriber of audio-visual goods or services, and not goods or services writ large." *Id.* at *6. This interpretation is also supported by legislative history, which explains that the VPPA "is drafted 'to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the [law].'" *Id.* (quoting S. REP. 599, 12, 1988 U.S.C.C.A.N. 4342-1, 4342–9). Indeed, courts have overwhelmingly dismissed VPPA cases where the plaintiffs allege merely that they subscribed to a newsletter without a consumption of audio video materials through such subscription.[4] Learfield respectfully requests that this Court do the same.

### *iii. Plaintiffs Do Not Allege That Learfield Disclosed PII.*

The most basic requirement of a VPPA claim is disclosure of "the kind of information that would readily permit ***an ordinary person to identify a specific individual's*** video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). Plaintiffs' Complaint includes

× Headers    Payload    Preview    Response    Initiator    Timing    Cookies

▼ General

Request URL: https://www.facebook.com/tr/?id=2183951358296598&ev=Microdata&dl=https%3A%2F%2Fusctrojans.com%2Fshowcase%2Fembed.asp x%3Farchive%3D52%26autoplay%3Dfalse&rl=https%3A%2F%2Fusctrojans.com%2Fsearchresults.aspx%3Fq%3Dvideo&if=false&ts=1677797447041& cd[DataLayer]=%5B%5D&cd[Meta]=%7B%22title%22%3A%22%5Cn%5 tVideo%3A%20Pac-12%20Mental%20Health%20-%20University%2%0of%20Southern%20 California%25Cn%22%7D&cd[OpenGraph]=%7B%7D&cd[Schema.org]=%5B%5D&cd[JSON-LD]=%5B%5D&sw=1536&sh=864&v=2.9.97&r=stable&ec=1&o=30&fb p=fb.1.1675958747183.1384012271&it=1677797445367&coo=false&es=automatic&tm=3&exp=c1&rqm=GET

Request Method: GET

---

[4] *See Salazar v. National Basketball Ass'n.*, No. 1:22-cv-07935, 2023 WL 5016968, at *8-10 (S.D.N.Y. Aug. 7, 2023); *Gardener v. MeTV*, No. 22CV5963, 2023 WL 4365901 (N.D. Ill. Jul. 6, 2023); *Hunthausen v. Spine Media, LLC*, No. 3:22-cv-1970-JES-DDL, 2023 WL 4307163, at *3 (S.D. Ca. Jun. 21, 2023); *Scripps Networks*, 2023 WL 3061858, at *2); *Jefferson v. Healthline Media, Inc.*, No. 3:22-CV-05059-JD, 2023 WL 3668522, at *3 (N.D. Cal. May 24, 2023); *Salazar v. Paramount Global d/b/a 247Sports*, No. 3:22-cv-00756, 2023 WL 4611819, at *19-22 (S.D.N.Y. Apr. 24, 2023); *Tawam v. Feld Ent. Inc.*, No. 23-CV-357-WQH-JLB, 2023 WL 5599007 (S.D. Cal. July 28, 2023).

13

images of the code allegedly sent to Facebook as illustrative examples of the type of "disclosure" on which they base their claims:

Request URL: https://www.facebook.com/tr/?id=2183951358296598&ev=Microdata&dl=https%3A%2F%2Fusctrojans.com%2Fshowcase%2Fembed.aspx%3FArchive%3D52%26autoplay%3Dfalse&rl=https%3A%2F%2Fusctrojans.com%2Fsearchresults.aspx%3Fq%3Dvideo&if=false&ts=1677797447041&cd[DataLayer]=%5B%5D&cd[Meta]=%7B%2title%22%3A%22Cn%5BtVideo%3A%23Pac-12%20Mental%20Health%20-%20University%20of%20Southern%20California%5Cn%22%7D&cd[OpenGraph]=%7B%7D&cd[Schema.org]=%5B%5D&cd[JSON-LD]=%5B%5D&sw=1536&sh=864&v=2.9.97&r=stable&ec=1&o=30&fbp=fb.1.1675958747183.1384012271&it=1677797445367&coo=false&es=automatic&tm=3&exp=c1&rqm=GET
Request Method: GET
Status Code: ● 200
Remote Address: [2a03:2880:f15e:182:face:b00c:0:25de]:443
Referrer Policy: no-referrer-when-downgrade

(Compl. ¶ 151, Figure 2.)

(*Id.* ¶ 155, Figure 3; *see also id.* ¶ 157, Figure 4.) This is not "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior," and, therefore, not covered by the VPPA.

### iv. *Plaintiffs Do Not Allege Learfield Knowingly Disclosed PII.*

Unless a VTSP provided notice and obtained consent, it is prohibited from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). The VPPA states that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). "[T]he information disclosed by a video tape service provider must, at the very least, identify a particular person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179.

Plaintiffs fail to allege that Learfield discloses PII for two distinct reasons. First, the Facebook User ID ("FID") is not itself PII. Second, Plaintiffs' allegations clearly state that Plaintiffs' own browsers allegedly transmit their FIDs.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.: 2:23-CV-04493-FLA-MAAx

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### 1.   The FID Is Not PII.

The VPPA "protects personally identifiable information that identifies a specific person and ties that person to particular videos that the person watched." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 285 (quoting *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014) (emphasis added)).[5] Plaintiffs fail to allege that Learfield disclosed any "personally identifiable information" because the FID is merely a static digital identifier.[6] Static digital identifiers include such things as a unique device identifier that is "randomly generated when a user initially sets up his device and should remain constant for the lifetime of the user's device." *In re Nickelodeon*, 827 F.3d at 282, n.124 (citing *Ellis v. Cartoon Network*, Inc. 803 F.3d 1251, 1257 (11th Cir. 2015)). These random strings of numbers, when viewed by an ordinary person, do not identify a person. Rather, static digital identifiers "fall[] even further down the spectrum [of identifiable information]" because "[t]o an average person, an IP address or *a digital code in a cookie file would likely be of little help in trying to identify an actual person*." *In re Nickelodeon*, 827 F.3d at 283 (emphasis added).

In *In re Nickelodeon*, the information at issue was plaintiff's IP address, a user's browser and operating system settings, and most importantly, *a computing*

---

[5] *See also Robinson*, 152 F. Supp. 3d at 182 ("the most natural reading of PII suggests that it is the information actually 'disclos[ed]' by a 'video tape service provider,' 18 U.S.C. § 2710(b)(1), *which must itself do the identifying* that is relevant for purposes of the VPPA (literally, 'information which identifies')—*not information disclosed by a provider, plus other pieces of information* collected elsewhere by non-defendant third parties.") (emphasis added).

[6] The *Nickelodeon* court noted that "[n]umerous district courts have grappled with the question of whether the [VPPA] applies to static digital identifiers" and that "[m]ost have followed the rule adopted in *In re Hulu Privacy Litigation*" wherein "[t]he court [] concluded that static digital identifiers that could, in theory, be combined with other information to identify a person do not count as 'personally identifiable information' under the Act, at least by themselves." 827 F.3d at 283 (collecting cases holding the same including *Robinson*, 152 F. Supp. 3d at 182–83; *Eichenberger v. ESPN, Inc.*, No. 14–cv–463 (TSZ), 2015 WL 7252985, at *4–5 (W.D. Wash. May 7, 2015); *Ellis v. Cartoon Network, Inc.*, No. 1:14–CV–484–TWT, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT CASE NO.: 2:23-CV-04493-FLA-MAAx

*device's unique device identifier. Id.* at 281-82. The court explicitly held that "the expansion of privacy laws since the [VPPA's] passage demonstrates that, whatever else 'personally identifiable information' meant in 1988, it did not encompass" such static digital identifiers. *Id.* at 286. And unlike other statutes which "gave the FTC authority to expand the types of information that count as personally identifying under that law," "*[t]he [VPPA]…does not empower an administrative agency to augment the definition of 'personally identifiable information' in light of changing circumstances or new technologies*. The meaning of that phrase in the Act is, it would appear, *more static.*" *Id.* (emphasis added.) Further, the court explained that Congress's subsequent amendment of the VPPA in 2013 demonstrates Congress was "was keenly aware of how technological changes have affected the original Act" and "*[d]espite this recognition, Congress did not update the definition of personally identifiable information in the statute.*" *Id.* "What's more, it chose not to do so despite . . . submitted written testimony that" specifically argued for "the addition of Internet Protocol (IP) Addresses and *account identifiers* to the definition of [personally identifiable information]." *Id.* at 288 (emphasis added).

The FIDs that Plaintiffs allege were disclosed are *not* PII because they are merely static digital identifiers that are automatically sent through a cookie file to a single company, which is nothing like the purposeful and public disclosures of actual names with video viewing history to the public at large. *See id.* at 286 ("[t]he classic example will always be a video clerk leaking an individual customer's video rental history," and "every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim.").

### 2. Plaintiffs' Own Browsers Allegedly Disclosed The FID.

Plaintiffs allege that "[w]hen a Pixel event triggers, the parameters included in a Request URL provide websites and Facebook with additional information about the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT CASE NO.: 2:23-CV-04493-FLA-MAAx

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

event being triggered," which "may include the title of a video being watched or the URL of the video." (Compl. ¶¶ 83-84.) Plaintiffs further allege "[w]hen a Facebook user logs onto Facebook, a 'c_user' cookie—which contains a user's non-encrypted Facebook User ID number (['FID'])—***is automatically created and stored on the user's device*** for up to a year." (*Id*. ¶ 138 (emphasis added).) Plaintiffs' allegations clearly state "the Pixel … forced ***Plaintiffs' web browser to transfer Plaintiffs' identifying information***, like their Facebook ID." (*Id*. ¶ 348 (emphasis added).)

Plaintiffs' allegations align with how cookies generally work. *In re Facebook, Inc. Internet Tracking Litig.*, explains that "[w]hen a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser. These cookies store the user's login ID [FID], and they capture, collect, and compile the referer headers from the web pages visited by the user" and "continued to capture information after a user logged out of Facebook and visited other websites." 956 F.3d 589, 596 (9th Cir. 2020).[7]

The dictionary definition of a "cookie" and case law on third-party Facebook cookies make clear that Plaintiffs' FIDs are stored on Plaintiffs' computers—not by Learfield—and subsequently transmitted to Facebook ***by Plaintiffs' own browsers because Plaintiffs have given Facebook consent to collect such information***. (Compl. ¶ 138 "When a Facebook user logs onto Facebook, a 'c_user' cookie . . . is automatically created and stored"); *see In re Meta Pixel Healthcare Litig.*, 2022 WL

---

[7] *See also In re Meta Pixel Healthcare Litig*., No. 22-cv-03580, 2022 WL 17869218 at *4 (Dec. 22, 2022, N.D. Cal. 2022) ("Cookies are 'small pieces of text used to store information on web browsers.'"); *Mount v. PulsePoint, Inc.,* No. 13 CIV. 6592 (NRB), 2016 WL 5080131, at *1-2 (S.D.N.Y. Aug. 17, 2016) ("Persistent cookies, commonly called 'tracking cookies,' are designed to remain after the user moves on to a different website or even after the browser is closed. Persistent cookies are set by third parties, including advertising companies that have placed ads on the first-party website."). A "cookie" as defined by Merriam-Webster's dictionary is "a small file or part of a file ***stored on a World Wide Web user's computer***, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." (*See* "Cookie" (df. 3) (https://www.merriam-webster.com/dictionary/cookie) (last visited September 12, 2023) (emphasis added).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT CASE NO.:  2:23-CV-04493-FLA-MAAx

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

17869218 at *5 ("Meta gives users the ability to control the use of information about their off-Facebook activity (such as activity on third-party websites) for advertising purposes" and "Users can 'disconnect' the off-Facebook activity that has been associated with their account—which prevents the data from being used for personalized advertising"). Because Plaintiffs' specific allegations support that Plaintiffs' FIDs are transmitted by their own website browsers, *which they consented to*—not by Learfield—and because they do not allege that Learfield discloses any other PII to Facebook, Plaintiffs fail to allege that Learfield discloses PII.

### 3. Plaintiffs Fail To Allege That Learfield Knowingly Disclosed PII.

Beyond Plaintiffs' failure to allege that Learfield disclosed PII at all, *see supra* § I(A)(v)(1), they also do not allege that Learfield had any way to know whether Plaintiffs, or any other user, had an FID, much less what those FIDs were, or whether Plaintiffs set their browsers to allow Facebook cookies. Therefore, the Complaint does not assert that Learfield *knowingly* disclosed their FIDs, let alone their PII.

### B. The VPPA, As Applied To Learfield, Violates The First Amendment.

The VPPA, as applied to Learfield, is far too vague and overbroad. If the VPPA is interpreted as Plaintiffs are advocating, Learfield is potentially subject to the VPPA as a "video tape service provider" and prohibited from sharing otherwise legal commercial information with third parties, as is common in all commercial industries, even though Learfield is nothing like the "video rental store" contemplated by Congress when enacting the VPPA. Rather than make clear the types of entities regulated by the statute, the statute is being interpreted by plaintiffs to allow for regulation of any "business" that "delivers" audio visual materials.

### C. Certain Parts Of The VPPA Are Facially Unconstitutional.

The VPPA imposes a disproportionately burdensome restraint on protected commercial speech, specifically, "information which identifies a person as having

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710. To survive First Amendment scrutiny, such a restriction must meet three conditions: (1) the government must have a "substantial interest in regulating the speech," (2) the regulation must "directly and materially advance[ ] that interest," and (3) the regulation must be "no more extensive than necessary to serve the interest." *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980). Moreover, the restricting "language may not be unconstitutionally vague or its prohibitions too broad in their sweep, failing to distinguish between conduct that may be proscribed and conduct that must be permitted." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973). The VPPA does not satisfy these conditions.

The government cannot demonstrate a "substantial interest" in a blanket restriction on the disclosure of personally-identifiable video viewing information of any business that delivers videos, in particular because Congress never intended such a sweeping restriction. *Supra* § A. And there is no "persuasive evidence" that the VPPA's restrictions are "part of a long tradition of proscription." *Brown v. Entertainment Merchants Assoc.,* 131 S.Ct. 2729, 2734 (2011).

Additionally, the vague terms in the VPPA have resulted in an explosion of litigation, primarily against companies whose businesses look nothing like the brick and mortar "video-tape service provider" Congress intended to regulate. Left undefined in the statute, the expansive dictionary definitions of words like "business" and "delivery" render the scope of restricted companies virtually limitless, and certainly unmoored from the interests expressed by Congress.

Last, the onerous consent process set out in section 2710 of the VPPA—which requires consent for disclosure to be collected (i) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer and given either (I)  at the time the disclosure is sought; or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

19

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(II)  in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and (iii) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election—is far more burdensome than necessary to serve the relevant government interest here. *See Daniel v. Cantrell*, 375 F.3d 377, 383-384 (6th Cir. 2004). It would be within the Court's power to invalidate the onerous elements of the consent requirement, including but not limited to 18 U.S.C. § 2710(b)(2)(B)(i)-(iii), to make it consistent with notice and consent to other online terms and conditions. *See Free Enterprise Fund v. Public Company Accounting Oversight Bd*., 561 U.S. 477, 508 (2010); *Barr v. Am. Ass'n of Political Consultants, Inc*., 140 S. Ct. 2335, 2348–56 (2020).

## D.   Plaintiffs Fail To State A Claim For Violation Of The CIPA.

CIPA § 631 makes three distinct and mutually independent patterns of conduct unlawful: (1) "'intentional wiretapping [with any telegraph or telephone],' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Sup. Ct. of San Diego Cty*., 22 Cal. 3d 187, 192 (Cal. 1978). Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Id*.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

  *i.* <u>*Plaintiffs Have Not And Cannot State A Claim For Violation Of CIPA Because Plaintiffs Have No Reasonable Expectation Of Privacy In Their Browsing Information.*</u>

Plaintiffs do not have a reasonable expectation of privacy in the browsing information that was sent by the Pixel to the Third Parties. Multiple courts have found that internet users do not have a reasonable expectation of privacy in such website usage data. *See U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (no reasonable expectation of privacy in browsing information because users "should know that this information is provided to and used by Internet service providers for the specific purposes of directing the routing information."); *Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 8200619, at *10 (N.D. Cal. Aug. 12, 2016); *see also U.S. v. Heckenkamp*, 482 F.3d 1142, 1148 (9th Cir. 2007) ("no reasonable expectation of privacy" in network logs); *U.S. v. Avecedo-Lemus*, No. SACR 15-00137-CJC, 2016 WL 4208436, at **11-20 (C.D. Cal. Aug. 8, 2016) (no subjective expectation of privacy in IP address "because he routinely disclosed it to third parties, …and the websites he visited on the open Internet."); *Massie v. Gen. Motors LLC*, No. CV 21-787-RGA, 2022 WL 534468, at *2, 5 (D. Del. Feb. 17, 2022) ("Plaintiffs do not have a reasonable expectation of privacy over the anonymized data captured by the Session Replay software at issue here" which recorded "website users' mouse movements, clicks, and keystrokes, producing 'video-accurate renders of real visits' to websites" and "the date, time, and duration of a user's visit, as well as the user's IP address, 'location at the time of the visit[ ],' browser type, and device's operating system.")

  *ii.* <u>*Contents of communications were not disclosed.*</u>

Several courts have held that "contents of a communication" includes "any information concerning the substance . . . of that communication," but does not include record information. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020); *see also Byars v. Tire*, No. 5:22-cv-01358-SSS-KKx, 2023 U.S. Dist.

LEXIS 22337, at *11 (C.D. Cal. Feb. 3, 2023) (holding same). Record information refers to the characteristics of the communication, "generated in the course of the communication, such as the name, address, and subscriber number or identity of a subscriber or customer." *Graham*, 533 F. Supp. 3d at 833. Record information also includes "usernames, passwords," the "origin, length, and time of a call, [and] geolocation data." *Id.*; *Brodsky*, 445 F. Supp. 3d 110; *see McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2 2021) ("[C]ollecting data on when and how often an Android Smartphone user opens and runs non-Google apps and the amount of time spent on the apps is more akin to login activities and *In re Zynga* forecloses a CIPA claim predicated on this type of record information.").

Indeed, in *Yale v. Clicktale Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, *1, *3 (N.D. Cal. Apr. 15 2021), plaintiff's CIPA claims were dismissed because all information collected was "non-content information" where Gap's website used a product that "capture[d] ***each of Plaintiff's keystrokes and mouse clicks*** on the [w]ebsite[] . . . [and] also captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device." *See also Yoon v. Lululemon, USA Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (citing to courts that have held ***keystrokes, mouse clicks, pages viewed***, shipping and billing information, date and time of website visit, duration of the visit, and IP address are record information and not protected by CIPA) (emphasis added).

Here, Plaintiffs allege that Learfield disclosed much less than every keystroke and mouse-click that Plaintiffs took on the Team Websites, and rather only allege that search terms embedded in URL strings sent through code were allegedly disclosed to the Third-Parties, amongst other record information such as IP addresses.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

22

Therefore, Plaintiffs' CIPA claim must be dismissed because no contents of communications were disclosed but rather only record information.

### iii. *Plaintiffs Fail To Allege An Underlying Violation Of § 631(a)'s First Clause For "Intentional Wiretapping."*

To state a claim under Section 631(a)'s first clause, Plaintiffs must allege that Learfield "intentionally tap[ped], or ma[de] any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument …." *Mastel*, 549 F. Supp. 3d at 1134 (quoting Cal. Pen. Code § 631(a)) (alterations in original). Here, Plaintiffs allege that "[t]he Operator Defendants purposefully disclosed Plaintiffs' communications to the tracking entities to improve the effectiveness of the tracking entities' advertising and marketing or to place third-party ads on the Team Websites." (Compl. ¶¶ 62-63.) However, as Plaintiffs allege that Learfield are the alleged operators of the Team Websites, any communications submitted to the website are submitted to Learfield, and therefore cannot be "unlawfully intercepted." This is because "[a] party to a conversation is not liable under Section 631(a) for recording its own conversation." *Licea v. Vitacost.com, Inc.*, No. 22-CV-1854-RSH-WVG, 2023 WL 5086893, at *3 (S.D. Cal. July 24, 2023); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("the only communications that Plaintiffs argue Apple 'intercepted' are Plaintiffs' communications to Apple" and "Apple cannot intercept communications to which Apple is already a party."); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811, 160 Cal.Rptr. 471 (Ct. App. 1979)) (holding same); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897-98, 125 Cal.Rptr. 306 (Ct. App. 1975) (holding same).

Further, based on these allegations, Plaintiffs are clearly asserting that Learfield tapped or made an unauthorized connection with a website, not a telephone line. Section 631(a)'s first clause, however, is explicitly limited to communications sent over a "telegraph or telephone," which does not include internet-based

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

communications between a website and its visitor. *See What if Holdings,* 2022 WL 17869275, at *2 ("[T]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet."); *Mastel*, 549 F. Supp. 3d at 1134-35 (collecting decisions holding that this prohibition is limited to communications in "telegraph or telephone" contexts, and dismissing CIPA claim that failed to allege tapping of such communications); *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (holding same); *Licea*, 2023 WL 2415592, at *5 (holding same); *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *8 n.8 (C.D. Cal. Feb. 14, 2023) (holding same).

Because any wiretapping was allegedly done through embedded software code on communications made over the internet and not a "telegraph or telephone wire," Plaintiffs cannot establish an underlying violation by Learfield under the first clause of Section 631(a).

### iv.   *Plaintiffs Fail To Allege An Underlying Violation Of § 631(a)'s Second and Third Clause.*

The second clause of § 631(a) penalizes a party who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state ...." Cal. Penal Code § 631(a). The third clause of § 631(a) penalizes a party who "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." *Id.*

Plaintiffs' claims under the second and third clause fail because Learfield, as a direct party to the communication, could not have intercepted the communication. Indeed, "courts agree that § 631(a)'s first and second clauses apply only to third parties and not to participants of a communication." *Martin v. Sephora USA, Inc.*,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   No. 122CV01355JLTSAB, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023),

2   report and recommendation adopted, No. 122CV01355JLTSAB, 2023 WL 3061957

3   (E.D. Cal. Apr. 24, 2023).

4       Plaintiffs' claim under the second or third clause also fail as to disclosures

5   allegedly made to Facebook because Plaintiffs consented to the communication of

6   their website usage information to Facebook. As described *supra* §A(iv)(2), in

7   Facebook's settings, Plaintiffs can choose what cookies to enable and information to

8   be tracked.  *See Smith v. Facebook, Inc*., 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017),

9   *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (holding that plaintiffs' consent to Facebook's

10   tracking activity barred their statutory and common-law privacy claims).

11       Additionally, the information allegedly sent to the Third Parties through the

12   Pixel was not "in transit" as required by second clause of § 631 which "imputes

13   liability when the defendant reads, or attempts to read, a communication that is '***in***

14   ***transit*** . . . ." *Mastel,* 549 F. Supp. 3d at 1136 (emphasis added). For a communication

15   "to be intercepted" it "must be acquired during transmission, not while it is in

16   electronic storage." *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir.

17   2002) (analyzing in the context of the Wiretap Act). The Ninth Circuit in *Konop*

18   reasoned that "[t]his conclusion is consistent with the ordinary meaning of

19   'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"

20   *Id*. (quoting Webster's Ninth New Collegiate Dictionary 630 (1985)).

21       Courts applying § 631(a) and the Wiretap Act have acknowledged that, given

22   the speed of modern internet communications, their "application to that form of

23   electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield*

24   *Grp*., 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014). This is largely because internet

25   communications travel so quickly that there is only an incredibly narrow window

26   during which an interception could occur. *See id*. at 951-52. Indeed, numerous courts

27   have held that while internet communications may be improperly accessed either on

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' RULE 12(B)(6) AND 12(B)(7)
MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.:  2:23-CV-04493-FLA-MAAx

the originating or receiving end, they are not typically intercepted during transmission. *Id*.[8]

Here, Plaintiffs do not allege any facts plausibly showing that the Third Parties intercepted the contents of their communications while in transit. Plaintiffs have not alleged any facts that the Third Parties intercepts those communications before or at the same time they are provided to Learfield on the Team Websites. To the extent Plaintiffs claim that Learfield intercepted the communications while in transit as a third party eavesdropper, this argument fails because as detailed *supra* §D(iii), Plaintiffs allege Learfield owns and operates the Team Websites and, therefore, cannot be eavesdroppers to information submitted on its own website.

Moreover, Plaintiff fails to allege any facts demonstrating that Learfield "read," "attempted to read," or attempted "to learn the contents of any communication" while it was "in transit." *See Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing CIPA claim where "there [was] no plausible allegation that Defendant acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being received.").

> v. *Plaintiffs Fail To Allege An Underlying Violation Of § 631(a)'s Fourth Clause.*

Plaintiffs cannot assert a valid derivative § 631(a) claim under the aiding and abetting clause against Learfield because Plaintiffs fail to allege that Learfield

---

[8]*See also, e.g., Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *10 (C.D. Cal. Mar. 7, 2023); *Mastel*, 549 F. Supp. 3d at 1137; *Pena v. GameStop, Inc.*, 2023 WL 3170047, at *5 (S.D. Cal. Apr. 27, 2023). In *Smith v. Facebook, Inc.*, 262 F. Supp. 3d at 951, the Court found that the Pixel simply allows a connection to occur between the plaintiff's browser and the Facebook server, but "the connection happens independently" and the company using the Pixel "play[s] no part in the exchange of data between Facebook and Plaintiffs.")

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

violated any aspect of § 631(a) in their own right. Plaintiffs' failure to allege an underlying § 631(a) violation against any party, means that Plaintiffs cannot prove that Learfield aided or abetted that same § 631(a) violation. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022); *Vitacost.com, Inc.*, 2023 WL 5086893, at *3.

### E. <u>Plaintiffs Fail To State A Claim For Violation Of CIPA § 635.</u>

California Penal Code § 635 penalizes "[e]very person who manufactures . . . sells, offers for sale, advertises for sales, possesses . . . or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another . . . ." However, § 637.2 provides a private right of action for CIPA violations only where a "person [] has been injured by a violation of this chapter. . . ." Cal. Penal Code § 637.2(a).

In *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021), the court explained that, "[t]he parties do not cite, and the Court could not find, authority on whether § 637.2(a) provides a private right of action for claims arising under § 635. The language of the CIPA is far more straightforward than the Wiretap Act: only a person 'who has been injured by a violation of this chapter' may assert a civil claim." The court, therefore, held that because "Quantum Metric's manufacture, assembly, sale, advertisement, transportation, import, or furnishing of Session Replay did not directly injure Yoon" but rather, "Yoon alleges that Lululemon's ***use*** of Session Replay injured her, CIPA § 637.2 does not provide Yoon with a private right of action to enforce CIPA § 635 against Quantum Metric." *Id*. Similarly here, Plaintiffs do not allege that Learfield's furnishing of the Pixel to USC directly injured Plaintiffs, but rather that their ***use*** on the Team Websites did. (*See e.g.* Compl. ¶ 13, 15, 22.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Moreover, because Plaintiffs fail to allege wiretapping under CIPA § 631, Plaintiffs do not have a viable § 635 claim. *See Yale*, 2021 WL 1428400, at *3 ("the plaintiff does not plausibly plead Clicktale's wiretapping" therefore, "there is no section 635(a) claim because there is no wiretapping.") Therefore, Plaintiffs' § 635 claim should be dismissed.

### F. **Plaintiffs Fail To State A Claim For Invasion Of Privacy.**

For an invasion of privacy claim, defendant's actions must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992, 125 Cal. Rptr. 3d 260, 265 (2011), *as modified* (June 7, 2011). Plaintiffs generally allege that they have "a reasonable expectation that their communications and other data would remain confidential and that Defendants would not install wiretaps on the Team Websites." (Compl. ¶ 404.) However, multiple courts have found that Plaintiffs do not have a reasonable expectation of privacy in the browsing information that was sent by the Pixel to the Third Parties. *Supra* §D(i). Further, "[t]o prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Folgelstrom*, 195 Cal. App. 4th at 992. As further explained *supra* §I(D)(iii), Learfield did not penetrate any "zone of physical or sensory privacy surrounding, or obtain[] unwanted access to data about, the plaintiff" because Learfield had a right to Plaintiffs' website browsing data as the alleged Team Websites' owner.

### G. **Plaintiffs Fail To State A Claim For Violation Of The Wiretap Act.**

To succeed on a Wiretap Act claim, Plaintiffs must prove, in relevant part, that: (1) a person intentionally disclosed, or endeavored to disclose, to any other person;

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.: 2:23-CV-04493-FLA-MAAx

(2) the contents of any wire, oral, or electronic communication; (3) knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; (4) without the party's consent. 18 U.S.C.A. § 2511.

### i. *All Parties consented to the disclosure.*

First, Learfield consented to the communications because Plaintiffs allege that Learfield owned or operated the Team Websites. (*See supra* §I(D)(iii).) Therefore, any information Plaintiffs entered into the Team Websites, Learfield consented to receive, and was party to, and Learfield cannot be liable for a violation of the Wiretap Act.

Moreover, as it pertains to the information allegedly disclosed to Facebook, Plaintiffs consented to the communication of their website usage information to Facebook, as explained *supra* §A(iv)(2).

### ii. *"Contents" of communication were not disclosed.*

The contents of Plaintiffs' communications were not disclosed. Under the Wiretap Act, "contents" is defined as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). The Ninth Circuit explained the term "contents" means "the intended message conveyed by the communication and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.,* 750 F.3d 1098, 1106 (9th Cir. 2014) (citing *United States v. Reed*, 575 F.3d 900, 917 (9th Cir.2009); *Gilday v. Dubois*, 124 F.3d 277, 296 n. 27 (1st Cir.1997). Plaintiffs allege only that search terms embedded in computer code automatically created upon a users' visit to the Team Websites were disclosed to Third Parties, amongst other record information such as IP addresses. *Supra* §(D)(ii). Therefore, Plaintiffs' CIPA claim should be dismissed because no contents of communications were disclosed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### iii.   *The Information Was Not "Intercepted."*

To state a claim under the Wiretap Act, Plaintiffs must allege that Learfield disclosed the information "knowing or having reason to know that the information *was obtained through the interception* of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C.A. § 2511 (emphasis added). The information was not obtained through interception because Plaintiffs allege that Learfield owns or operates the Team Websites. *Supra* § I(D)(iii).   Therefore, Plaintiffs' Wiretap Act claim fails.

**H.    Complaint Should Be Dismissed Because USC Is An Indispensable Party.**

Plaintiffs' Complaint should be dismissed because the USC is an indispensable party. F.R.C.P. 12(b)(7); F.R.C.P. 19(a).  Plaintiffs' claims concern allegedly concerted conduct by USC and Learfield, which allegedly produced a singular purported statutory violation for which the Court cannot accord complete relief in the absence of USC and would leave Learfield open to a risk of incurring double or otherwise inconsistent obligations.

### CONCLUSION

WHEREFORE, Learfield respectfully moves to dismiss Plaintiffs' Complaint with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Dated:  September 21, 2023          **BAKER & HOSTETLER LLP**

By:  */s/ Teresa C. Chow*
TERESA C. CHOW

*Attorneys for Defendants*
LEARFIELD COMMUNICATIONS, LLC
AND SIDEARM SPORTS, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Learfield Communications, LLC and Sidearm Sports, LLC certifies that this brief contains 6,952 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 21, 2023

/s/ *Teresa C. Chow*
TERESA C. CHOW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) AND 12(B)(7) MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO.:  2:23-CV-04493-FLA-MAAx